UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAKIA NUSRAT, <br><br> *Plaintiff*, <br><br> v. <br><br> ANTONY J. BLINKEN *et al.*, <br><br> *Defendants*. | Civil Action No. 21-2801 (TJK) |

### MEMORANDUM OPINION

Zakia Nusrat is an American citizen who submitted visa petitions on behalf of her noncitizen parents. She sued the Secretary of State and other government officials alleging that they have unreasonably delayed adjudicating her parents' follow-on visa applications. She seeks a court order compelling adjudication of the applications, as well as declaratory and injunctive relief from a policy allegedly causing the delay. Defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons below, the Court will grant Defendants' motion and dismiss the case.

**I.    Background**

    **A.    The I-130 Petition for Alien Relative**

The Immigration and Nationality Act ("INA") authorizes the issuance of immigrant visas to certain relatives of U.S. Citizens. 8 U.S.C. § 1101 *et seq.*; *Arab v. Blinken*, No. 21-cv-1852 (BAH), 2022 WL 1184551, at *1 (D.D.C. Apr. 21, 2022). To obtain permanent resident status for qualifying foreign relatives under the INA, a U.S. citizen must submit Form I-130 ("Petition for Alien Relative") to U.S. Customs and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1); *see also Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs.,

1

*available at* https://www.uscis.gov/i-130.  If USCIS approves the petition, it is forwarded to the State Department's National Visa Center, and the "foreign national is notified to go to the local U.S. consulate in [her] country to complete visa processing, which includes submitting [a Form DS-260 visa application] and appearing for an interview with a consular officer." *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020); *see* 22 C.F.R. §§ 204.2(a)(3), 42.67(a)(3).  The consular officer must then either issue or refuse the visa.  *See Ghadami*, 2020 WL 1308376, at *1.

**B.    This Suit**

Nusrat alleges that in February 2018 she submitted I-130 petitions on behalf of her noncitizen parents.  ECF No. 1 ¶¶ 13–15.  USCIS allegedly approved the petitions in October 2018 and forwarded them to the U.S. Embassy in Dhaka, Bangladesh, for further review.  *Id.* ¶ 13.  After her parents submitted visa applications, Embassy officials interviewed her mother and father in December 2019 and January 2020, respectively.  *Id.* ¶ 15.  Nusrat alleges that Embassy officials then placed the applications in "administrative processing" and have made no final decisions.  *Id.* ¶ 16.

Nusrat further alleges that Defendants are "intentionally delaying" the adjudication of her parents' applications because of the Controlled Application Review and Resolution Program ("CARRP"), a Department of Homeland Security ("DHS") policy addressing "applications deemed to present potential 'national security concerns.'"  ECF No. 1 ¶ 37–41.  The policy purportedly directs USCIS officials "to deny the application or delay adjudication" of applications that involve potential "national security concerns."  *Id.* ¶ 39.  Nusrat alleges that CARRP affects applicants from mainly Muslim countries, such as her parents.  *Id.* ¶ 41.

Nusrat sued multiple federal officials in their official capacities: the Secretary of State, the Attorney General, the Secretary of Homeland Security, the Director of USCIS, the Director of the FBI, the Acting Legal Adviser to the State Department, and the Deputy Chief of Mission of the U.S. Embassy in Dhaka, Bangladesh. She asserts three causes of action. She first claims that Defendants violated the Administrative Procedure Act ("APA") because their failure to adjudicate the visa applications constitutes an "unreasonable delay" (Count I). ECF No. 1 ¶ 20. She also asserts that if her APA claim fails, the Court should grant relief under the Mandamus Act (Count II). *Id.* ¶ 35. Finally, she claims that CARRP violates the INA, the APA, and the Fifth Amendment (Count III). *Id.* ¶ 37–41. For relief, she seeks a court order requiring adjudication of the visa applications within 15 days and declaratory and injunctive relief from CARRP. *Id.* at 10. Defendants moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. ECF No. 6. Nusrat opposed. ECF No. 7.

**II.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). When faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The Court does not limit its analysis to the allegations in the complaint in its analysis—it may consider materials outside the pleadings. Still, the Court must "accept all of the factual allegations in [the] complaint as true." *United States v. Gaubert*, 499 U.S. 315, 327 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 540 (1988)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). To survive a 12(b)(6) motion, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 668. Though the court must accept all factual allegations as true, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.     Analysis

Defendants move to dismiss Nusrat's complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They first argue that Nusrat lacks standing to sue certain Defendants and that the Court therefore lacks jurisdiction over those claims. *See* ECF No. 6 at 10–11. They also argue that Nusrat has failed to state a claim as to the sole remaining Defendant because the doctrine of consular nonreviewability precludes judicial review of visa decisions and, alternatively, that her allegations do not make out a claim for unreasonable delay. *See id.* at 12–24. One way or another, the Court agrees with Defendants that the case must be dismissed.

#### A.     Subject-Matter Jurisdiction

##### 1.     CARRP Claim

The Court begins with Nusrat's challenge to CARRP (Count III). She claims that CARRP violates the INA, the APA, and the Fifth Amendment. *See* ECF No. 1 at 10. She alleges that this

4

DHS policy "intentionally delays the applications of Muslims or those from predominantly Muslim countries due to perceived security concerns" and that the State Department works with DHS to apply CARRP. *Id.* ¶ 37–38. And Nusrat alleges that her parents are from a "predominantly Muslim country" and that "on information and belief . . . Defendants are intentionally delaying" adjudication "because of an application of the CARRP program." *Id.* ¶ 41.

Nusrat has not alleged enough to establish standing to challenge CARRP.[1] To establish the "irreducible constitutional minimum" of standing, a plaintiff must allege that she has "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).

Courts in this district have "consistently held that if CARRP does not apply to plaintiffs, and they have not been affected by it, then they have no standing to pursue a claim based on it." *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *6 (cleaned up). Nusrat only alleges that her parents are from a "predominantly Muslim country" and that "upon information and belief" CARRP caused the claimed delay. But she alleges no facts suggesting that CARRP affected her parents' applications specifically. *See Giliana v. Blinken*, No. 21-cv-1416 (CRC), 2022 WL 910338, at *7 (D.D.C. Mar. 29, 2022); *see also Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 31–35 (D.D.C. 2018) (upholding CARRP claim where petitioner served in Iranian government and was investigated by the FBI). Nusrat's allegations do not

---

[1] The Government did not address Nusrat's CARRP claim in its motion, nor did Nusrat in her opposition. But the Court has an independent obligation to raise the issue because standing is necessary for the Court's subject-matter jurisdiction, and it may consider materials outside the pleadings to do so. *See Steffan v. Perry*, 41 F.3d 677, 697 n.20 (D.C. Cir. 1994); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

"demonstrate that she has suffered an injury-in-fact as a result of the policy." *Alshawy v. U.S. Citizenship and Immigr. Srvs.*, No. 21-cv-2206 (FYP), 2022 WL 970883, at *4 (D.D.C. Mar. 30, 2022) (quoting *Ghadami*, 2022 WL 1308376, at *6 n.4). Other courts have found nearly identical language insufficient to establish standing to challenge CARRP. *See Giliana*, 2022 WL 910338, at *6; *Mahmood*, 2021 WL 5998385, at *6; *Ghadami*, 2020 WL 1308376, at *6. As in those cases, Nusrat's allegations about CARRP are not enough to support a "plausible inference" that the policy affected her parents' applications, and so she lacks standing. *Giliana*, 2022 WL 910338, at *6.[2]

For these reasons, the Court will grant Defendants' motion to dismiss with respect to Nusrat's challenge to CARRP.

### 2. Claims Against Non-Consular Officer Defendants

Defendants argue that the Court does not have subject-matter jurisdiction over most of Nusrat's claims because she lacks standing to sue the Secretary of Homeland Security, the Director of USCIS, the Attorney General, the Director of the FBI, the Secretary of State, and the Acting Legal Adviser to the State Department. This is so, they say, because these Defendants have "no role in adjudicating" the visa applications or have "completed their role in the process." ECF No. 6 at 10.

To begin, the Court lacks jurisdiction over Nusrat's claims against the DHS and USCIS officials named. According to the allegations in complaint, which the Court accepts as true, *see Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), USCIS—a component of DHS—approved the relevant petitions in October 2018, ECF No. 1 ¶ 13. Thus, Defendants are

---

[2] Several courts have also pointed out that publicly available USCIS documents show that CARRP does not apply to I-130 visa petitions, making it even less likely that CARRP has caused an injury here. *See Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893 (APM), 2022 WL 424967, at *3 (D.D.C. Feb. 11, 2022); *Alshawy*, 2022 WL 970883, at *4.

correct that even at the time of filing, these Defendants have already completed their role in adjudicating the visa petitions. Courts in this District are divided as to whether this scenario presents standing or mootness defects. *Compare Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376 (RC), 2021 WL 4191958, at *3 (D.D.C. Sept. 15, 2021) (dismissing claims against DHS and USCIS officials on mootness grounds), *and Mahmood*, 2021 WL 5998385, at *4 (same), *with Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807 (DLF), 2022 WL 424983, at *3–4 (D.D.C. Feb. 11, 2022) (dismissing similar claims on standing grounds). But either way, the Court lacks subject-matter jurisdiction over these claims because even "according to Plaintiff[,] the case is out of the hands of USCIS and DHS." *Brzezinski*, 2021 WL 4191958, at *3.

The Court also agrees with Defendants that Nusrat lacks standing to sue the Attorney General, the FBI Director, the Secretary of State, and the Acting Legal Advisor to the State Department. To establish standing at the motion-to-dismiss stage, a plaintiff must "state a plausible claim" that "she has suffered an injury in fact that is fairly traceable to the defendant's actions and that is likely to be redressed by the relief she seeks." *Attias v. Carefist, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (cleaned up). Nusrat lacks standing because she fails to plausibly allege that these officials caused the delay at issue or otherwise had (or have) any role in the visa adjudication process.

For starters, Nusrat alleges only that the Attorney General is "responsible for adjudicating visa petitions" and "implementing" the INA. ECF No. 1 ¶ 9. The complaint does not allege any facts suggesting that the disputed delay here is traceable to the Attorney General's actions or that the Attorney General plays *any* role in adjudicating visa applications. The complaint is also lacking as to the Director of the FBI. Although Nusrat alleges that the delay "may be attributed to [the FBI's] failure to process a security check," *Id.* ¶ 10, she alleges no other facts that push the claim

7

from the possible to the probable, *see Iqbal*, 556 U.S. at 678.  The "sheer possibility" that the FBI played some role in the disputed delay is insufficient to allege standing.  *Id.*

Last, the Court agrees with Defendants' claim that because only "consular officer[s]" adjudicate visa applications, Nusrat lacks standing to sue the Secretary of State and the Acting Legal Adviser to the State Department.  ECF No. 6 at 11; 8 U.S.C. § 1202(b), (d).  The Circuit has held that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Unsurprisingly, Nusrat only alleges that these two defendants are on the hook because they are senior State Department officials; she alleges no facts tying them to the disputed delays.  *See* ECF No. 1 ¶¶ 7–8.  She has therefore failed to plead the "irreducible" minimum that any injury suffered is traceable to the Secretary of State or Acting Legal Adviser.  *Lujan*, 504 U.S. at 560.

For these reasons, the Court will dismiss Nusrat's claims against the Secretary of Homeland Security, the Director of USCIS, the Attorney General, the Director of the FBI, the Secretary of State, and the Acting Legal Adviser.[3]

    **B.**    **Failure to State a Claim**

        **1.**    **Consular Nonreviewability**

What remains are Nusrat's claims against a consular official at the U.S. Embassy in Dhaka, Bangladesh.  Defendants first argue that these claims are "untenable" under the doctrine of

---

[3] Another court in this District has remarked that similar claims against the Attorney General and FBI Director may be dismissed on mootness grounds. *See Arab*, 2022 WL 1184551, at *5 n.5. But there, the Government raised only mootness, rather than standing arguments. In any event, the court then proceeded to the merits of the plaintiff's claims against the properly named consular official only. *See id.* at *6.

consular nonreviewability, which holds that a "consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159.  They contend—citing information on the State Department's website—that the relevant applications were "refused" for further administrative processing, which constitutes an unreviewable decision covered by the doctrine.  ECF No. 6 at 7.

Not so.  The doctrine of consular nonreviewability applies only to final decisions on immigration applications.  *See, e.g.*, *Ibrahim v. U.S. Dep't of State*, No. 19-610 (BAH), 2020 WL 1703892, at *4–5 (D.D.C. Apr. 8, 2020); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 97–98, (D.D.C. 2020); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290–293 (D.D.C. 2016); *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997).  Courts have "consistently recognized" that "where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final." *Ibrahim*, 2020 WL 1703892, at *5 (cleaned up);  *see Giliana*, 2022 WL 910338, at *2; *Ghadami*, 2020 WL 1308376, at *5; *Vulupala*, 438 F. Supp. 3d at 99; *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, 18-cv-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019).[4]  Thus, "claims alleging unreasonable delay while a case remains suspended in 'administrative processing' are not barred by the doctrine of consular

---

[4] Defendants' reliance on *Baan Rao Thai Restaurant v. Pompeo* on this point is misplaced.  *See* 985 F.3d 1020 (D.C. Cir. 2021).  In *Baan Rao*, the D.C. Circuit held that a treaty between the United States and Thailand did not permit the plaintiffs to overcome the doctrine of consular nonreviewability in the denial of their visa applications.  985 F.3d at 1025.  But there the Court considered a final decision by the Department of State to deny visa applications, not the type of interim "administrative processing" delays here.  985 F.3d at 1023.

nonreviewability." *Ghadami*, 2020 WL 1308376, at *5; *see Afghan & Iraqi Allies*, 2019 WL 367841, at *10 (describing administrative processing as an "intermediate step").[5]

### 2. *TRAC* Factors

Defendants finally argue that Nusrat has failed to state a claim for unreasonable delay (Count I) and mandamus (Count II). ECF No. 6 at 15. The Court agrees.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton* ("*Mashpee*"), 336 F.3d 1094, 1099 (D.C. Cir. 2003) (cleaned up). The standard is the same under the Mandamus Act, and so the Court will therefore consider these claims together. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)).

To determine whether an agency has "unreasonably delayed" action, courts use the six-factor test established in *Telecommunications Research and Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). The Court considers:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[5] Department of State policy bolsters this point. Consular officers place applications in administrative processing to gather "additional information from sources other than the applicant [that] may help establish an applicant's eligibility for visa." *Administrative Processing Information*, U.S. Dep't of State, Bureau of Consular Affairs, *available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html.

(4) the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude to hold that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 79–80 (cleaned up).

The first factor is the "most important." *Liu v. Blinken*, 544 F. Supp. 3d 1, 10 (D.D.C. 2021) (citing *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). The reasonableness of the agency's actions depends "in large part. . .upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102. Courts typically consider the first and second factors together because both "analyze whether there is sufficient rhyme and reason to explain the Government's response time." *Eljalabi v. Blinken*, 21-cv-1730 (RC), 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (cleaned up). These factors favor Defendants.

Defendants are correct that there is no mandatory timeframe in which a consular officer must process a visa application. Rather, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54 (collecting cases). And even though the INA states that "[i]t is the sense of Congress" that an application should be processed within 180 days, 8 U.S.C. § 1571(b), this expectation is "aspirational, rather than mandatory." *Liu*, 544 F. Supp. 3d at 12. As another court in this District held, "the prefatory 'sense of congress' language in § 1571(b) is best interpreted as nonbinding," given that the D.C. Circuit has recognized that "a sense of Congress resolution is not law." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (quoting *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)). True, Congress could have said nothing, and that they did

11

not helps Nusrat slightly. *See Liu*, 544 F. Supp. 3d at 12. But courts in this District routinely turn to caselaw to assess whether a delay is unreasonable under the APA absent a binding congressional timetable. *See Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide").

The law in this Circuit suggests that the about 32-month delay here does not violate the APA. *See, e.g.*, *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3–4 (D.D.C. Apr. 29, 2022) (33-month delay not unreasonable); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 162 (D.D.C. 2021) (29-month delay not unreasonable and noting that delays of three to five years are often not unreasonable); *Meyou v. U.S. Department of State*, No. 21-cv-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (29-month delay not unreasonable); *Mahmood v. U.S. Department of Homeland Security*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (25-month delay not unreasonable).[6] And, as Defendants highlight, this is all the more so given that the pandemic has strained the State Department's ability to process visa applications. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 310–11 (D.D.C. 2020); *Dastagir*, 557 F. Supp. 3d at 163; *Giliana*, 2022 WL 910338, at *5; *Liu*, 544 F. Supp. 3d at 11–12.[7] On this record, the Court

---

[6] Courts measure the period of delay from the last government action to the issuance of the opinion. *See Mahmood*, 2021 WL 5998385, at *6 ("Similar cases 'seem to focus on the delay' from the last Government action 'to the issuance of the opinion.'" (quoting *Brzezinski*, 2021 WL 4191958, at *4 & n.3)); *Eljalabi*, 2022 WL 275261 (same); *Arab*, 2022 WL 1184551 (same). In this case, the delay began in January 2020, when the Embassy officials placed both applications in administrative processing. *See* ECF No. 1.

[7] Another court in this District has specifically noted the effects of the pandemic on consular functions in Bangladesh. *See Zaman v. DHS*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) ("The significant public health considerations impacting consular staff and the suspension of visa activities in Bangladesh are circumstances well beyond the agency's control, and they weigh in favor of defendants on the first two *TRAC* factors.").

cannot find "that the Government's timeline for adjudicating [the] application[s] lacks reason." *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (stressing the "logistical challenges that COVID-19 has imposed").

Courts consider the third and fifth factors together as well, because they consider the plaintiff's "interests, health, and welfare," as well as "other interests prejudiced by the agency's delay." *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021); *Liu*, 544 F. Supp. 3d at 12.  These factors favor Nusrat.  The Court takes seriously the harm that separation imposes on a family.  *See Liu*, 544 F. Supp. 3d at 12–13 (third factor favored plaintiffs due to harm from family separation); *Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (same); *Ghadami*, 2020 WL 1308376, at *9 (same).  And the Court recognizes that this delay has likely had a "profound negative impact" on Nusrat and her parents.  ECF No. 1 ¶ 19.

The fourth factor requires the Court to account for the effects of expedited action on "agency activities of equal or greater priority."  *Ghadami*, 2020 WL 1308376, at *9.  The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee*, 336 F.3d at 1100 (cleaned up).  This factor favors Defendants and is ultimately fatal to Nusrat's claim of unreasonable delay.  "Defendants, not this Court, are best positioned to understand the continued effect of the pandemic on their operations, the entire backlog of visa applications, [and] the competing demands on involved personnel."  *Liu*, 544 F. Supp. 3d at 13.  Moreover, "[d]elays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities."  *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  Nusrat effectively asks the Court to "reorder agency priorities"

and "move all others back one space and produce no net gain," *In re Barr Lab'ys.*, 930 F.2d 72, 76 (D.C. Cir. 1991) (cleaned up), something courts look upon with "disfavor," *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021).

The sixth factor supports neither side. This factor simply "reminds courts that they 'need not find any impropriety . . . to hold that agency action is unreasonably delayed.'" *Meyou*, 2022 WL 1556344, at *5 (quoting *TRAC*, 750 F.2d at 80). Nusrat does not plausibly allege that "the agency has acted in bad faith in delaying action." *See Gona v. USCIS*, No. 20-cv-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). True, she alleges that CARRP is unlawful and that it caused the delay. But the alleged illegality of an agency policy is not the sort impropriety this factor contemplates. *See*, *Liu*, 544 F. Supp. 3d at 15 (A "good faith legal disagreement" about the application of a State Department practice is "hardly an impropriety that the Court would weigh in plaintiffs' favor under this factor."). And in any event, she lacks standing to pursue this claim.

In the end, although the Court is sympathetic to Nusrat's situation, the *TRAC* factors do not favor ordering immediate adjudication of the visa applications. Considering the length of the delay and the COVID-19 pandemic, any such order would benefit Nusrat and her parents at the expense of those already in the queue and facing similar burdens and hardships—a result that the D.C. Circuit forecloses. *See Mashpee*, 336 F.3d at 1100. Thus, the Court will grant Defendants' motion to dismiss with respect to the remaining APA and Mandamus Act claims.

## IV. Conclusion

For all the above reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: September 8, 2022